UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ALVION PROPERTIES, INC., SHIRLEY K. MEDLEY, and HAROLD M. REYNOLDS,<br><br>      Plaintiffs,<br><br>      v.<br><br>BERND H. WEBER, RAYMONDE WEBER, CLAUDE J. CHAUVEAU, AMERICAN GULF FINANCE CORP., ALVION PARTNERS, LLC, AGF REALTY SOLUTIONS, INC., TIMEDATA HOLDINGS, LLC,<br><br>      Defendants.<br><br>BERND H. WEBER, CLAUDE J. CHAUVEAU,<br><br>      Counter-Claimants,<br><br>Harold M. Reynolds, Shirley K. Medley, Donald M. Medley, Farmers State Bank Of Alto Pass, Brad Henshaw, Allain de la Motte, Elizabeth Melland, Robert M. West, Melland Group, LLC,<br><br>      Counter-Defendants. | NO. 3:08-0866<br>Judge Sharp/Bryant<br>**Jury Demand** |

TO: The Honorable Kevin H. Sharp

**REPORT AND RECOMMENDATION**

      Third-party defendant Elizabeth Melland has filed her revived motion for summary judgment (Docket Entry No. 471). Third-party plaintiffs Bernd Weber and Claude Chauveau have not filed a response in opposition and the time within which they were

obligated to do so has expired.[1]

For the reasons stated below, the undersigned Magistrate Judge recommends that third-party defendant Melland's motion for summary judgment be **granted** and the third-party complaint against her **dismissed** with prejudice.

### **Standard of Review**

A party may obtain summary judgment by showing "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(a); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine dispute of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed.R.Civ.P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine

---

[1] Mr. Weber and Mr. Chauveau did file a response in opposition to an earlier version of Ms. Melland's motion. This response is filed at Docket Entry No. 361.

issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**Summary of Pertinent Factual Allegations**

Third-party defendant Elizabeth Melland was first joined as a party to this action upon the filing of a third-party complaint (designated as a counterclaim) on November 4, 2010 (Docket Entry No. 322). Ms. Melland is identified in paragraph 9 of this third-party complaint as a resident of Hillsboro, Oregon, and the wife of third-party codefendant Allain De la Motte, "a managing member, director and principal of Melland *Group*, LLC, and as a co-conspirator against Counter-claimants." (Docket Entry No. 322 at 33). Unless the undersigned Magistrate Judge has overlooked something in this prolix pleading, the only other place where Ms. Melland is mentioned by name is in paragraph 31, where she is alleged to have attended a "celebratory dinner" in November 2007, to celebrate the closing of two "consulting agreements." (Docket Entry No. 322 at 38). Otherwise in this pleading Ms. Melland is not mentioned by name, but is lumped together with third-party defendants De la Motte, West and Melland *Group,* LLC under the collective label "Melland Counter-defendants." (Third-party

3

complaint, paragraph 14).

The undersigned Magistrate Judge summarizes the material facts alleged in the 43-page counterclaim and third-party complaint as follows:[2]

In June 2005, defendant Bernd H. Weber ("Mr. Weber") was introduced to Shirley Medley, Don Medley and Jack Reynolds, all principals in Alvion Properties, Inc. ("Alvion"). Alvion was represented to own 4,500 acres of undeveloped land in Southwest Virginia that contains "vast underlying coal reserves worth hundreds of millions of dollars." These Alvion principals entered into certain agreements with Mr. Weber and Mr. Weber's wholly-owned company, American Gulf Finance Corporation ("AGFC"), pursuant to which Mr. Weber and AGFC agreed to provide to Alvion certain "consulting and business development services" in order to "monetize" the undeveloped coal reserves owned by the corporation. Later, in September 2007, Weber persuaded Shirley Medley and Jack Reynolds to execute certain irrevocable stock powers purporting to transfer to Mr. Weber ownership of all Alvion stock.

Sometime before November 2007, and apparently in the course of Mr. Weber's duties as financial and business development consultant to Alvion, Mr. Weber met representatives of the Melland Group, LLC ("Melland"). Melland is identified as a limited liability company based in Oregon.

---

[2]The Court in this summary has not attempted to include every detail, but has sought to summarize those claims that may implicate Ms. Melland.

According to paragraph 28 of the third-party complaint, Mr. Weber on November 6, 2007, "negotiated and entered into a personal consulting agreement with Melland and negotiated another separate consulting agreement on behalf of Alvion with Melland." According to the third-party complaint, the consulting agreement that Mr. Weber negotiated on behalf of Alvion required Alvion to pay Melland $530,000 "in up-front licensing and consulting fees." Apparently at the same time, Mr. Weber entered into a separate agreement between himself and Melland pursuant to which Melland appointed Mr. Weber as its acting senior vice president and paid Mr. Weber a "consulting fee" of $110,000. (The third-party complaint fails to address what, at least to the undersigned Magistrate Judge, appears to be a glaring and obvious conflict of interest, in that Mr. Weber is receiving payment from both parties to an agreement that Mr. Weber negotiated, apparently while acting as an agent of one, or both parties.) As consideration for the money paid by Alvion to Melland pursuant to this agreement, Melland was to provide certain consulting and technology services, including but not limited to access to "proprietary investment technology" owned by Melland.

Sometime in November 2007, Mr. Weber was introduced by the Melland principals to Claude Chauveau, identified as the founder and chief executive officer of TimeData Corporation, a financial information technology corporation. Mr. Chauveau at the time also served as an officer of Melland.

In November and December 2007, Mr. Weber and Mr. Chauveau approached certain New York banks in an effort to license and

5

market the proprietary investment technology owned by Melland. According to the third-party complaint, from December 2007 through February 2008, Mr. Weber and Mr. Chauveau "shockingly received extensive negative feedback from several major financial institutions in New York that the Melland Counter-defendants' alleged investment technology was complete nonsense and likely illegal." (Docket Entry No. 322 at 39). Mr. Weber and Mr. Chauveau allege that, following these reports, they conducted an independent investigation and confirmed that the Melland technology was neither proprietary, a trade secret nor legitimately patentable. Mr. Weber and Mr. Chauveau claim that on February 7, 2008, they met with attorneys for Melland in New York and "unilaterally terminated their respective relationships with the Melland Counter-defendants." They also allegedly informed the Melland principals that their claims regarding the Melland proprietary financial technology were false and misleading.

According to the third-party complaint, the Melland Counter-defendants thereafter (1) falsely claimed that Mr. Weber and Mr. Chauveau were attempting to steal Melland's alleged proprietary investment technology; and (2) began to interfere maliciously with Mr. Weber and Mr. Chauveau's business relationships. Specifically, Mr. Weber and Mr. Chauveau claim that the Melland principals, through an attorney, contacted the Alvion principals and told them that Weber and Chauveau were attempting to steal the Melland financial technology. The third-party complaint further alleges that the Melland principals apparently also convinced the Alvion principals that Mr. Weber and Mr. Chauveau

6

were "dishonest operators," and that they were also likely attempting to steal Alvion from the Alvion principals.

As a result of these allegedly false accusations by the Melland principals, the third-party complaint alleges that on May 22, 2008, the Alvion principals "unilaterally terminated all further communications with Counter-claimant Weber." Mr. Weber and Mr. Chauveau allege "that the Melland Counter-defendants and their lawyers conspired with and duped the Alvion Counter-defendants and Alvion into falsely believing that Counter-defendant Melland's allegations of proprietary investment technologies and claims against Counter-claimants Weber and Chauveau were true." (Docket Entry No. 322 at 43).

Paragraph 49 of the third-party complaint alleges as follows: "On August 12, 2008 having had enough of the Counter-defendants' derisive and damaging collective adversarial actions and interference, Counter-claimant Weber/AGFC finally made the decision pursuant to the promissory estoppel doctrine to execute AGFC's legal rights vested in the Irrevocable Stock Powers (ISPs) that counter-defendants Karnes Medley and Reynolds had executed on September 3, 2007, which gave counter-claimant Weber/AGFC the right to legally assume all voting and ownership control of Alvion."

On August 14, 2008, the Melland principals filed suit against Mr. Weber and Mr. Chauveau in the U.S. District Court for the District of Oregon, alleging that Mr. Weber and Mr. Chauveau "had stolen their fictitious proprietary investment technology." Less than a month later, on September 12, 2008, the Alvion principals filed this action in this Court against Mr. Weber and

7

Mr. Chauveau alleging, among other things, that Mr. Weber and Mr. Chauveau had "stolen Alvion from the Counter-defendants Karnes Medley and Reynolds." (Docket Entry No. 322 at 46).

The third-party complaint alleges that all of the counter-defendants and third-party defendants, collectively, conspired together "to instigate, finance and file unsubstantiated lawsuits against counter-claimant Weber, counter-claimant Chauveau and others." In addition it is alleged that the counter-defendants and third-party defendants conspired to interfere unlawfully with Mr. Weber's legitimate ability to monetize the coal reserves of Alvion; to cause unnecessary legal costs for Mr. Weber and Mr. Chauveau; to discredit, defame and financially damage Mr. Weber and Mr. Chauveau; and to attempt to convince this Court to declare the irrevocable stock powers by which Mr. Weber obtained ownership of all stock in Alvion to be fraudulent and legally null and void.

**Analysis**

In her motion for summary judgment, Ms. Melland argues (1) that the Court lacks personal jurisdiction over her in Tennessee; (2) that service of process on her is insufficient; and (3) that, based upon undisputed facts, she did not participate in a conspiracy or otherwise engage in any wrongful acts toward third-party plaintiffs Weber and Chauveau.

Addressing service of process first, the undersigned Magistrate Judge finds that there are at least genuine issues of material fact regarding the adequacy of service, and therefore, Ms. Melland's arguments on this ground lack merit. Ms. Melland in her affidavit (Docket Entry No. 472) states that she has never been

properly served in this case as required by Federal Rule of Civil Procedure 4 because she has been traveling outside the United States since December 24, 2009. The record contains a return of service indicating that Ms. Melland was served with process by means of United States mail, certified and return receipt requested, addressed to her at 2460 SE Larkspur Court, Hillsboro, Oregon 97123 (Docket Entry No. 335). According to a copy of U.S. Post Office records filed with the Court, this mail was delivered and a notice left on November 12, 2010 (Id. at 10).

Rule 4(e) of the Federal Rules of Civil Procedure provides that service of process upon an individual may be accomplished through any of the means described in subsection (2) or, according to subsection (1), by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Although Rule 4 itself does not authorize service of process by mail, the corresponding Tennessee state court rule does permit service of a summons and complaint upon a defendant by U.S. mail, registered return receipt or certified return receipt. Tenn. Rules of Civil Procedure 4.05(1)(a) and 4.04(10).

From the record before the Court, the undersigned Magistrate Judge finds that Ms. Melland was served by mail in compliance with the provisions of Rule 4.05 of the Tennessee Rules of Civil Procedure or, at a minimum, the record contains evidence that at least gives rise to a disputed issue of material fact relating to sufficiency of service of process. Therefore, the

undersigned Magistrate Judge finds that, to the extent her motion is premised upon insufficient service of process, her motion must be denied.

**<u>Personal Jurisdiction and Evidence of Conspiracy</u>.** Ms. Melland also argues that this Court lacks personal jurisdiction over her in Tennessee on the ground that her contacts with this state are insufficient to justify requiring her to defend a lawsuit here. Paragraph 9 of the third-party complaint (Docket Entry No. 322 at 33) asserts that Ms. Melland is a resident of Hillsboro, Oregon.

The Sixth Circuit has articulated a two-step inquiry to determine whether a federal district court sitting in a diversity-of-citizenship case can exercise personal jurisdiction over a defendant: (1) whether the law of the state in which the district court sits authorizes jurisdiction, and (2) whether the exercise of jurisdiction comports with the Due Process Clause. Brunner v. Hampson, 441 F.3d 457, 463 (6th Cir. 2006) (citation omitted). See also Pickens v. Hess, 573 F.2d 380, 385 (6th Cir. 1978).

Tennessee's long-arm statute subjects nonresident parties to the jurisdiction of state and federal courts in Tennessee on any claim arising from:

(1) the transaction of any business within this state;

(2) any tortious act or omission within this state;

(3) the ownership or possession of any interest in property located within this state;

(4) entering into any contract of insurance, indemnity or guaranty covering any person, property or risk located within this

state at the time of contracting;

    (5) entering into a contract for services to be rendered or for materials to be furnished in this state;

    (6) any basis not inconsistent with the constitution of this state or of the United States.

Tenn. Code Ann. § 20-2-214(a).

The Tennessee long-arm statute is construed to grant jurisdiction fully to the limits of the Due Process Clause of the Fourteenth Amendment. <u>Pickens</u>, 573 F.2d at 385. "The seminal case in the Sixth Circuit for determining whether the exercise of personal jurisdiction is consistent with due process is <u>Southern Machine Co. v. Mohasco Industries, Inc.</u>, 401 F.2d 374 (6th Cir. 1968)." <u>Inter-City Products Corp. v. John Willey, Sr., et al.</u>, 149 F.R.D. 563, 571 (M.D. Tenn. 1993).

In her affidavit filed in support of her motion for summary judgment (Docket Entry No. 472), Ms. Melland states that she has never conducted or performed any of the activities listed in the Tennessee long-arm statute that would support personal jurisdiction over her here. This affidavit testimony is undisputed by any sworn testimony in this record.

Third-party plaintiffs Weber and Chauveau, in their response in opposition to Ms. Melland's earlier motion for summary judgment (Docket Entry No. 361), appeared to argue that personal jurisdiction over Ms. Melland in Tennessee is premised upon their allegations of the existence of a conspiracy, and that some of the coconspirators committed acts within Tennessee. However, Ms. Melland's supporting affidavit states that she is a "100% passive

11

investor" in Melland Group, LLC, that she has never performed any management or made any decisions on behalf of this company, that she had nothing to do with either this case or the case filed by her husband against Mr. Weber and Mr. Chauveau in Oregon.

The Sixth Circuit has ruled that unsupported allegations of the existence of a conspiracy are insufficient contacts to justify the exercise of personal jurisdiction over a nonresident. Chandler v. Barclays Bank PLC, 898 F.2d 1148, 1155 n. 3 (6th Cir. 1990). Elsewhere the court has held that

> "totally unsupported allegations of conspiracy cannot constitute sufficient contacts . . . to justify an exercise of personal jurisdiction . . . .
>
> Similarly, the allegation of conspiratorial activities with tortious consequences in the forum state is insufficient to support jurisdiction under the long-arm statute in the absence of some minimal factual showing of . . . participation in the conspiracy.

Chrysler Corp. v. Fedders Corp., 643 F.2d 1229, 1237 (6th Cir. 1981).

As referenced elsewhere in this report and recommendation, the only allegation in the third-party complaint of any specific act by Ms. Melland is the claim that she attended a "celebratory dinner" in Oregon in November 2007, which was attended by Mr. Weber, Mr. Chauveau and others (Docket Entry No. 322 at 38). Elsewhere in this lengthy third-party complaint Ms. Melland is not mentioned specifically by name, but instead is lumped together with others under the general, collective title of "Melland Counter-Defendants." The undersigned Magistrate Judge finds that, in

addition to being unsupported by any sworn testimony, these allegations lack even a minimal factual showing that Ms. Melland participated in an alleged conspiracy and, therefore, they are insufficient to support personal jurisdiction over her within Tennessee.

For the foregoing reasons, the undersigned Magistrate Judge finds that there are no genuine issues of material fact, that Ms. Melland is entitled to judgment as a matter of law, that her motion for summary judgment should be granted, and that the third-party complaint against her should be dismissed with prejudice.

## RECOMMENDATION

For the reasons stated in this report, the undersigned Magistrate Judge **RECOMMENDS** that third-party defendant Elizabeth Melland's motion for summary judgment (Docket Entry No. 471) be **GRANTED** and that the third-party complaint against her be **DISMISSED** with prejudice.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days from service of this Report and Recommendation in which to file any written objections to this Recommendation, with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in this Report in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can

constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985), reh'q denied, 474 U.S. 1111 (1986).

**ENTERED** this 13th day of February 2012.

> s/ John S. Bryant
> JOHN S. BRYANT
> United States Magistrate Judge