UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ALVION PROPERTIES, INC. et al. ) | |
| ) | Case No. 3:08-cv-866 |
| Plaintiffs, ) | |
| ) | JUDGE SHARP |
| v. ) | |
| ) | MAGISTRATE JUDGE BRYANT |
| BERND H. WEBER, et al. ) | |
| ) | JURY DEMANDED |
| Defendants. ) | |
| _____) | |
| ) | |
| BERND H. WEBER et ano. ) | |
| ) | |
| Counter-Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| HAROLD M. REYNOLDS, et al., ) | |
| ) | |
| Counter-Defendants. ) | |

COME NOW the Plaintiffs/Counter-Defendants, Alvion Properties, Inc. et al., Shirley Karnes Medley, Donald Medley and Harold Reynolds, by and through the undersigned counsel, who, in response to defendants Bernd H. Weber and Claude J. Chauveau's[1] motion to dismiss counts I, IV, V. VI, IX and X of the plaintiffs' first amended complaint (D.E. 550) would show as follows:

I. <u>Law and Argument</u>

The standard on 12(b)(6) motions to dismiss is well settled. As noted in *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995):

---

[1] Plaintiffs would point out that the motion to dismiss was filed only on behalf of defendants Weber and Chauveau, in their individual capacities.

1

On a Fed.R.Civ.P. 12(b)(6) motion, all of the allegations contained in the plaintiff's complaint are accepted as true, and the complaint is construed liberally in favor of the party opposing the motion. *Mertik,* 983 F.2d at 1356; *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). In *Scheuer v. Rhodes,* the Supreme Court explained:

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence ... its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.

*Scheuer,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). It is not the function of the court to weigh evidence or evaluate the credibility of witnesses, *Cameron v. Seitz,* 38 F.3d 264, 270 (6th Cir.1994); instead, the court should deny the motion unless it is clear that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Cameron,* 38 F.3d at 270 (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

In the present matter, defendants Weber and Chauveau appear to be arguing that Counts I (Breach of Fiduciary Duty), IV (Intentional Interference with Existing Business Relationships), V (Breach of Good Faith and Fair Dealing), VI (Conversion), IX (Civil Conspiracy) and X (Unjust Enrichment) of the plaintiffs' first amended complaint should be dismissed in their entirety due to such claims being premised upon "trade secrets" and thus preempted by Tenn. Code Ann. § 47-25-1701, *et seq.* Defendants' argument, although admittedly clever, is entirely specious. Contrary to the assertions of defendants Weber and Chauveau, the "gravamen" of the plaintiffs' first amended complaint is not that these defendants misappropriated the plaintiffs' trade secrets, although such may have been involved. Defendants' memorandum in support (Doc. 551), p. 3. The gravamen of the plaintiffs' complaint is that defendants Weber and Chauveau misappropriated, or have at least attempted to misappropriate, **ALL** of the

2

assets of Alvion Properties including its trade secrets. As such, the plaintiffs' claims are not preempted by Tenn. Code Ann. §47-25-1701 *et seq.*

In their argument, defendants Weber and Chauveau cite to paragraph 71 of plaintiffs' first amended complaint, which deals with Count I (Breach of Fiduciary Duty) and state "As [a] former officer of Alvion Properties, [Defendants] had unrestricted access to Alvion Properties' … **trade secrets**." Defendants' memorandum in support of motion to dismiss, p. 2 (Doc. 551) (Emphasis in defendants' memorandum). However, the entirety of paragraph 71 of plaintiffs' first amended complaint reads as follows:

> As a former officer of Alvion Properties, Weber (and, by extension, his wholly-owned companies) had (and continues to have) unrestricted access to Alvion Properties' assets, trade name and/or confidential and proprietary business information (including financial data, financial reports, appraisals, audits, accounting reports, surveys, plans, geology reports, mining plans, engineering reports and plans, facilities reports and plans, designs, maps, lay-outs, business contacts, business relationships, and information pertaining to Alvion Properties' financial dealings.), trade secrets and goodwill.

Thus, Defendants Weber and Chauveau have taken one category (trade secrets) out of numerous categories noted in paragraph 71 of the plaintiffs' first amended complaint and argue that because the plaintiffs have made allegations of misappropriation of trade secrets, as one of many claims, in derogation of their fiduciary duties to the plaintiffs, the entirety of the plaintiffs' claims are preempted by Tenn. Code Ann. § 47-25-1701, *et seq.* However, Tenn. Code Ann. § 47-25-1708 notes:

> (a) Except as provided in subsection (b), this part displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret.
>
> (b) This part does ***not*** affect:
>
> (1) Contractual remedies, whether or not based upon misappropriation of a trade secret; provided, a contractual duty to maintain secrecy or
3

> limit use of a trade secret shall not be deemed to be void or unenforceable solely for lack of durational or geographical limitation on the duty;
>
> (2) **Other civil remedies that are not based upon misappropriation of a trade secret**; or
>
> (3) Criminal remedies, whether or not based upon misappropriation of a trade secret.
>
> (c) In no event shall a written contract be required to maintain an action or recover damages for misappropriation of a trade secret proven under this part.

Tenn. Code Ann. § 47-25-1708 (West) (emphasis added). Clearly, Tenn. Code Ann. §47-25-1701 does not preempt plaintiffs' claims regarding civil remedies not based upon misappropriation of trade secrets[2].

Further, defendants Weber and Chauveau fail to note paragraph 74 of the plaintiffs' first amended complaint, which alleges that the defendants breached their fiduciary duty to the plaintiffs by, inter alia, establishing a new office for Alvion Properties, removing plaintiffs Medley and Reynolds as officers and directors of Alvion Properties, attempting to engage in financial transactions utilizing Alvion Properties, trade name **and assets**, etc. Although such claims may include claims for the misappropriation, misuse or outright theft of trade secrets, those counts also include claims for other types of actions that do not involve trade secrets, including the most obvious allegation that the defendants have attempted to utilize Alvion Properties' primary asset, 4500+ acres of coal reserves in Virginia. See plaintiffs' first amended complaint, para. 5 (D.E. 26). In sum, although trade secrets may be involved in this

---

[2] Although Plaintiffs argument herein focuses on Count I, the argument is universal and applies to all counts noted in Defendants Motion to Dismiss. For the sake of brevity, Plaintiffs have not addressed each count, but aver that the argument applies to all counts.

4

case, the case centers around the defendants use, and attempted taking, of Alvion Properties' primary asset, the 4500+ acres of coal reserves.

Further, Tenn. Code Ann. § 47-25-1702, which provides the definition of the term "trade secret," clarifies this issue. The statute provides:

> (4) "Trade secret" means information, without regard to form, including, but not limited to, technical, nontechnical or financial data, a formula, pattern, compilation, program, device, method, technique, process, or plan that:
>
> (A) **Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use**; and
>
> (B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Tenn. Code Ann. § 47-25-1702 (West) (emphasis added). In the present matter, the plaintiffs' allegations are primarily that defendants Weber and Chauveau "have actively engaged in a scheme to steal and take control of Alvion Properties." Plaintiffs' first amended complaint, para. 69 (D.E. 26). Plaintiffs assert that defendants have acted as if they owned the assets of Alvion Properties and have attempted to utilize confidential and proprietary information created by or for the plaintiffs to monetize the assets. However, a very important distinction is that the confidential and proprietary information obtained and used by the defendants, does not, "Derive[s] independent economic value." *Id.* In other words, without ownership of Alvion Properties' assets, the information associated with such has no independent value. Although plaintiffs aver, and will show at trial, that the defendants have attempted to use confidential and proprietary information gained while working for the benefit of Alvion Property (i.e.

5

property appraisals and geological studies), this information has no independent value without the associated ownership of Alvion Properties assets (i.e. an appraisal of the property has no value if such cannot be combined with the ownership of the property).

The cases cited by defendants Weber and Chauveau are not dispositive of the issues herein. In *Hauck Mfg. Co. v. Astec Industries, Inc.*, 375 F. Supp. 2d 649 (2004), the main focus was the usage by the defendant of "files, drawings, and other propriety information…vital to the research and development, technology, and pricing" of the plaintiff's technology. *Hauck*, 375 F. Supp. 2d at 652-653. In essence, the suit alleged that an employee of the plaintiff provided proprietary information to the defendant that the defendant then used in developing its own technology. The ideas themselves were the allegedly stolen information, which the defendant could then potentially use *without* possession or ownership of the related items those ideas were used to produce. In the present matter, although the defendants obtained, and have attempted to use, plaintiffs' proprietary information, the usage of such would only be profitable concomitant with the assets themselves. For example, the appraisal of the assets has no independent value unless utilized with the assets to establish their value. The facts as pled herein are distinguishable from those in *Hauck*.

Similarly, the issues in this matter are distinguishable from those in *Cardinal Health 414, Inc. v. Adams*, 582 F. Supp. 2d 967 (M.D. Tenn. 2008). In *Cardinal Health*, the plaintiff alleged that the defendants, former employees, used information obtained either during or after their employment with the plaintiff in directly competing with the plaintiffs. However, the issue was the information itself that the defendants were alleged to have used unlawfully, not the tangible assets of the plaintiff. The Court in

*Cardinal Health*, in addressing whether the plaintiff's civil conspiracy claims were preempted by the TUTSA, noted that the "same proof" test should be utilized, which says, "a claim will be preempted when it necessarily rises or falls based on whether the defendant is found to have misappropriated a trade secret … if proof of a non-[T]UTSA claim would also simultaneously establish a claim for misappropriation of trade secrets…." *Cardinal Health*, 582 F. Supp. at 985.

## Conclusion

The crux of this case is the defendants attempt to take and use the assets of Alvion Properties. The primary asset involved is the 4500+ acre portion of real property located in Virginia. As such, plaintiffs' claims are not preempted by the Tennessee Uniform Trade Secrets Act, Tenn. Code Ann. §47-25-1701 *et seq.* and defendants' motion should be denied.

Respectfully submitted,

\_\_/s/ Clancy J. Covert_____
Clancy J. Covert
Attorney for Plaintiffs/Counter-
P.O. Box 15307
Chattanooga, TN 37415
Telephone: (423) 826-2323
Facsimile: (423) 826-2330
clancy@covertlawgroup.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, via the method(s) indicated below on the following persons and/or counsel, this the 30th day of April, 2012.

| | |
|---|---|
| ( ) Hand | Bernd Weber, Pro Se |
| ( ) Mail | 55 Kingsbridge Garden Circle |
| ( ) Fax | Suite 702 |
| ( ) Fed Ex. | Mississauga, Ontario L5R 1Y1 |
| ( ) E-Mail | Canada |
| (X) ECF | agfinance@a-g-finance.com |

| | |
|---|---|
| ( ) Hand | Claude J. Chauveau, Pro Se |
| ( ) Mail | 67 East 11th Street, Suite 408 |
| ( ) Fax | New York, NY 10003 |
| ( ) Fed Ex. | cjc@a-g-finance.com |
| ( ) E-Mail | |
| (X) ECF | |

| | |
|---|---|
| ( ) Hand | Allain de la Motte, Pro Se |
| ( ) Mail | 2460 S.E. Larkspur Court |
| ( ) Fax | Hillsboro, OR 97123 |
| ( ) Fed Ex. | adlm@mellandgroup.com |
| ( ) E-Mail | |
| (X) ECF | |

| | |
|---|---|
| ( ) Hand | Robert M. West, Pro Se |
| ( ) Mail | 5005J Foothills Road |
| ( ) Fax | Lake Oswego, OR 97034 |
| ( ) Fed Ex. | rmwest@mellandgroup.com |
| ( ) E-Mail | |
| (X) ECF | |

    /s/ Clancy J. Covert
**Clancy J. Covert**  BPR#020033